CHEMIMETALS PROCESSING, INC. PLAINTIFF v. JEFFREY W. MCENENY AND VIBRA-CHEM COMPANY, DEFENDANTS

No. COA95-1432

(Filed 15 October 1996)

**Monopolies and Restraints of Trade § 21 (NCI4th)— agreement not to manufacture competing product—validity**

> A provision of an exclusive distributorship agreement for a metal finishing product prohibiting defendant distributor from directly or indirectly manufacturing or creating a competing product by using the composition, technology and process utilized by plaintiff manufacturer was not an improper covenant not to compete or a contract in restraint of trade but was valid and enforceable as reasonably related to the legitimate business interest of protecting the manufacturer's confidential information.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 846.**

CHEMIMETALS PROCESSING v. McENENY

[124 N.C. App. 194 (1996)]

Appeal by defendants from order entered 25 October 1995 in Mecklenburg County Superior Court by Judge Claude S. Sitton. Heard in the Court of Appeals 27 August 1996.

*Perry, Patrick, Farmer & Michaux, P.A., by Roy H. Michaux, Jr. and Richard W. Wilson, for plaintiff-appellee.*

*Moore & Van Allen, PLLC, by Jeffrey J. Davis and Meredith W. Holler, and James, McElroy & Diehl, P.A., by William K. Diehl, Jr., John S. Arrowood, and Ann L. Hester, for defendant-appellants.*

GREENE, Judge.

Jeffrey W. McEneny (McEneny) and Vibra-Chem Company (Vibra-Chem) (defendants), a corporation owned solely by McEneny, appeal an order granting ChemiMetals Processing, Inc.'s (ChemiMetals) (plaintiff) motion for a preliminary injunction.

The complaint in this action seeks damages for breach of the 25 April 1986 "Agreement" (Agreement) between ChemiMetals and P.J. Products, Ltd. (later known as Vibra-Chem). An amended complaint requests the issuance of a preliminary injunction requiring Vibra-Chem and McEneny, the president and sole shareholder of Vibra-Chem, to comply with section 3(b) of the Agreement. Section 3(b) of the Agreement provides in pertinent part:

> [Defendants] shall not directly or indirectly manufacture or otherwise create or recreate (or attempt to) the VC 17/18/19/20 Product Line or Process, or any similar chemical agent or compound, or any chemical agent or compound in direct competition with the VC 17/18/19/20 Product Line, except as required by this Agreement or with the express prior written consent and approval of ChemiMetals.

It was also agreed that ChemiMetals would manufacture the VC 17/18/19/20 Product Line (Product Line) and that Vibra-Chem would purchase the Product Line from ChemiMetals and be the "exclusive distributor" of the Product Line. The agreement also provided that "the makeup or composition of the [Product Line] and the knowledge or technology of ChemiMetals regarding the [Product Line] and [its] Process are proprietary to ChemiMetals, highly valuable to ChemiMetals . . . and are confidential to ChemiMetals." The Product Line is used to accelerate metal removal in metal finishing processes.

CHEMIMETALS PROCESSING v. McENENY

[124 N.C. App. 194 (1996)]

In August 1995, ChemiMetals demanded that the defendants pay it $228,836.43, which it claimed was due for the Product Line it had supplied to the defendants. When full payment was not received, ChemiMetals notified the defendants that it would no longer supply the Product Line to the defendants, as it considered its obligation to do so terminated. After ChemiMetals refused to supply the Product Line to the defendants, the defendants began to manufacture and distribute the Product Line. Vibra-Chem's sales of the Product Line constituted approximately thirty-five percent of its total sales.

On 25 October 1995, Judge Sitton issued a preliminary injunction ordering the defendants:

(i) not to manufacture directly or indirectly, or otherwise create, or recreate or attempt to create or recreate any of the products or processes within the Product Line or any similar chemical agent or compound or any chemical agent or compound in direct competition with the products or processes within the Product Line, or any improvement or enhancements or processes thereto;

(ii) not to supply information and/or trade secrets regarding the Product Line, VC-3 or any improvements or enhancements thereto to others who would manufacture such products for the Defendants; and

(iii) to deliver immediately to the Plaintiff all copies, drawings, notes, records, manuals, menus, photographs, tapes and all other information relating to the manufacture and processing of the Product Line, including enhancements.

---

The issue is whether this Agreement, limiting the defendants' right to manufacture Product Line, is a contract in restraint of trade.

The defendants argue that the Agreement imposes restrictions on their "ability to compete" with ChemiMetals and thus constitutes an "unenforceable restraint of trade." ChemiMetals argues that the Agreement is "not a covenant not to compete such as those imposed upon an employee or upon someone who sells an existing business and therefore, is not" properly considered a contract in restraint of trade. We agree with ChemiMetals.

## CHEMIMETALS PROCESSING v. McENENY

[124 N.C. App. 194 (1996)]

Our Courts have a long history of carefully scrutinizing "covenants that preclude a seller of a business from competing with the new owner" and covenants that prevent an employee from competing with his former employer. *E.g., United Lab., Inc. v. Kuykendall,* 322 N.C. 643, 649-50, 370 S.E.2d 375, 380 (1988); *Hartman v. Odell,* 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (1994), *disc. rev. denied,* 339 N.C. 612, 454 S.E.2d 251 (1995); *Jewell Box Stores v. Morrow,* 272 N.C. 659, 663, 158 S.E.2d 840, 843 (1968). These covenants, to be valid, are required to be (1) in writing, (2) part of the contract of employment or sale of the business, (3) based on valuable consideration, (4) reasonably necessary for the protection of the promisee's legitimate business interest, and (5) reasonable as to time and territory. *Professional Liab. Consultants v. Todd,* 122 N.C. App. 212, 215, 468 S.E.2d 578, 580 (1996). An agreement is not in restraint of trade, however, if it does not seek to prevent a party from engaging in a similar business in competition with the promisee, but instead seeks to prevent the disclosure or use of confidential information. *Glucol Mfg. Co. v. Schulist,* 214 N.W. 152 (Mich. 1927); *Hayes-Albion v. Kuberski,* 364 N.W.2d 609, 613 (Mich. 1984); *State Farm Mut. Auto. v. Dempster,* 344 P.2d 821, 826 (Cal. Ct. App. 1959); *see* 14 *Williston on Contracts* § 1633 (3d ed. 1972) (defining restraint of trade). Such agreements may, therefore, be upheld even though the agreement is unlimited as to time and area, *see* 17 C.J.S. *Contracts* § 254, upon a showing that it protects a legitimate business interest of the promisee. *See Rollins Protective Servs. Co. v. Palermo,* 287 S.E.2d 546, 550 (Ga. 1982).

In this case, the purpose of the Agreement is not to preclude the defendants from competing with ChemiMetals in a similar business. The Agreement simply prevents the defendants from using the "composition," "technology," and "[p]rocess" utilized by ChemiMetals in the manufacture of the Product Line, which information the defendants acknowledged to be the property of and confidential to ChemiMetals. It follows that the prohibition against the manufacturing of the Product Line is reasonably related to the protection of the confidential information and thus serves a legitimate business interest of ChemiMetals.

Because ChemiMetals has made a showing that the defendants have breached the Agreement, the trial court correctly determined that ChemiMetals was likely to succeed on the merits of the case and was thus entitled to a preliminary injunction. *A.E.P. Indus., Inc. v. McClure,* 308 N.C. 393, 401, 302 S.E.2d 754, 759 (1983).

We do not address, because the defendants do not raise this issue on appeal, whether this record shows that ChemiMetals has made a showing that it will suffer irreparable loss unless the injunction is issued, the second requirement necessary for the issuance of a preliminary injunction. *Id.*

We have considered and rejected the defendants' argument that the manufacturing restriction is not binding on them because ChemiMetals terminated the Agreement. The record reveals that ChemiMetals, after a dispute arose regarding defendants' nonpayment for Product Line "already sold," refused to furnish any additional Product Line to the defendants. ChemiMetals argues that the defendants' nonpayment constituted a material breach of the Agreement and thus excused it from its obligation to provide Product Line to the defendants. *See* 6 Williston, *Contracts* § 864 (3d ed. 1962). Although we need not finally determine that issue on this record, we do hold that ChemiMetals has shown a likelihood of success on this issue. We also fail to see any error in the order of the trial court requiring the defendants to deliver to ChemiMetals "all copies, drawings, notes, records, manuals, menus, photographs, tapes, and all other information relating to the manufacture and processing of the Product Line." We agree with the trial court that upon ChemiMetals' showing of a likelihood of success on the merits it was entitled to possession of these materials pending resolution of the dispute.

We have reviewed the remaining assignments of error asserted by the defendants and without discussion overrule them.

Affirmed.

Judges JOHN and MARTIN, Mark D., concur.