S. Fastening Sys., Inc. v. Grabber Constr. Products, Inc., 2015 NCBC 40.

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 04260

SOUTHERN FASTENING SYSTEMS,
INC.,

               Plaintiff,

v.

GRABBER CONSTRUCTION
PRODUCTS, INC. and JOSEPH
EDWARD FARRELL,

               Defendants

**ORDER AND OPINION ON
DEFENDANTS' MOTION
TO DISMISS**

{1}    **THIS MATTER** is before the Court upon Defendants Grabber Construction Products, Inc. ("GCP") and Joseph Edward Farrell's ("Farrell") Motion to Dismiss Plaintiff's Complaint under Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("the Motion")[1] in the above-captioned case. After considering the Motion, briefs in support of and in opposition to the Motion, and the arguments of counsel at a hearing on January 8, 2015, the Court hereby **GRANTS in part** and **DENIES in part** the Motion.

> *Harris Sarratt & Hodges, LLP by Donald J. Harris for Plaintiff Southern Fastening Systems, Inc.*
>
> *Bradley Arant Boult Cummings, LLP by Amy E. Puckett for Defendants Grabber Construction Products, Inc. and Joseph Edward Farrell.*

Bledsoe, Judge.

I.

PROCEDURAL AND FACTUAL BACKGROUND

{2}    The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the Complaint that are relevant to the Court's determination of the Motion. *See, e.g., Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

---

[1] Defendants' Motion to Dismiss is brought under Rule 12(b)(6) and relies on Rule 9(b) as one of the asserted grounds for dismissal of Plaintiff's fraud claim.

{3}  Plaintiff Southern Fastening Systems, Inc. ("SFS") is a Delaware company authorized to conduct business in North Carolina. (Compl. ¶ 1.)  SFS distributes wood-to-wood fasteners, automated fastening systems, and other supplies for wood construction projects to private and chain lumberyards, construction companies, and others, both sellers and end-users, throughout the United States.  SFS also provides service and repair for the tools that it sells. (Compl. ¶¶ 7, 8, 11.)

{4}  GCP is a Nevada corporation authorized to conduct business in North Carolina. (Compl. ¶ 2.)  GCP is a competitor of SFS and is also engaged in the business of selling construction supplies using a business model similar to SFS. (Compl. ¶ 12.)

{5}  SFS alleges that in light of the diversity of its customers and products, it requires each of its employees to undergo significant training, including intensive training in learning how to identify, use and value the more than 3,000 products and services offered by SFS, specific training in tool repair and familiarization so that employees can properly diagnose and repair the tools that SFS sells to its varied customer base, focused instruction concerning the company's culture and sales philosophy with its emphasis on high value products and service with an accompanying higher price, and training in the requirements of SFS's financial, inventory and asset management computers systems.  (Compl. ¶¶ 13–18.) Defendant Joseph Edward Farrell ("Farrell") was hired by SFS on or about August 21, 2000 as an outside sales representative to work in Georgia and North Carolina with then-current SFS customers and to solicit new customers for SFS in those states. (Compl.¶ 31.)[2]

{6}  Nearly three years after his employment began, on July 17, 2003, Farrell executed a Confidentiality and Non-Disclosure Agreement ("NDA")[3] with SFS. (Compl. ¶ 23, Ex. A.)  Under the NDA, Farrell agreed as follows:

---

[2] Farrell resides in Franklin, North Carolina and worked for SFS out of SFS's Loganville, Georgia distribution center.  (Compl. ¶ 3.)

[3] A copy of the NDA is attached to Plaintiff's Complaint as Exhibit A.

Employee agrees that during the term of his or her employment and following termination of employment, Employee will not directly or indirectly disclose or use for any reason whatsoever any Confidential Information obtained by Employee by reason of his or her employment by the Company except as required to conduct the business of the Company or as may be expressly authorized by the Company in writing.

(Compl. Ex. A, ¶ 2.)

{7} The NDA defines Confidential Information in the following fashion:

Concurrently herewith and from time to time in the future, the Company may, in its sole discretion, disclose or otherwise grant access to Employee certain selected financial data and other information concerning the Company and its business, including but not limited to, information regarding its customers, sales, products, markets, revenues, expenses, marketing plans and financial condition, past and prospective, all of which data and other information is confidential or proprietary (collective, the "Confidential Information"). Examples of documents containing confidential information include, but are not limited to: customer lists containing customer names and addresses; customer sales records and reports containing product preferences and usual prices charged; price lists containing products sales prices and their cost; sales invoices, packing lists, routing books, customer files, personnel files, computer records, financial records and marketing plans containing tactics and strategies.

(Compl. Ex. A, ¶ A.)

{8} Farrell acknowledged in the NDA that "[t]he Company's Confidential Information constitutes Trade Secrets, which belong to the Company and which are not generally known or easily discoverable by the Company's competitors" who "would receive an unfair advantage if they had access to the Company's Confidential Information." Farrell further acknowledged that unauthorized disclosure of the Confidential Information would "cause substantial harm to the Company." (Compl. Ex. A, ¶ 1.)

{9} The NDA also provides that:

Employee agrees that upon request of the Company or upon termination of his or her employment, Employee will promptly return to the Company all of the Company's property, including any documents, computer media or other material in Employee's possession or under the Employee's control, that may contain or be derived from Confidential Information.

(Compl. Ex. A, ¶ 3.)

{10} SFS alleges that "the confidential business information and Trade Secrets at issue in this case were made available to or developed by Farrell <u>after</u> Farrell executed his NDA." (Compl. ¶ 33 (emphasis in original).)

{11} On May 14, 2014, a vendor notified SFS that Farrell had stated that he was leaving SFS to work for GCP. (Compl. ¶ 34.) SFS contends that Farrell, on at least two occasions thereafter, told representatives of SFS that he had considered leaving SFS to work for GCP, but had not yet made up his mind. (Compl. ¶¶ 35, 37.) Subsequently, on June 3, 2014, Farrell tendered his resignation to SFS and began working for GCP the next day. (Compl. ¶ 38.)

{12} At Farrell's resignation, J.R. McReynolds, an SFS Regional Manager, provided Farrell with a copy of his NDA. Thereafter, on July 22, 2014, SFS through its corporate attorneys wrote to Farrell, provided him with another copy of his July 17, 2003 NDA, and demanded the immediate return of SFS property remaining in his possession.[4] (Compl. ¶¶ 39–40, Ex. B.)[5] SFS informed Farrell that "SFS had received information that strongly suggested that Farrell breached his NDA by disclosing the names of SFS customers to GCP and by contacting SFS customers for soliciting sales of GCP products." (*Id.*)

{13} SFS also sent GCP a Cease and Desist letter (the "GCP Cease and Desist Letter"), along with a copy of the NDA on July 22, 2014. (Compl. ¶ 42, Ex. C.)[6] The GCP Cease and Desist Letter informed GCP that Farrell was in breach of his NDA due to his disclosure to GCP of SFS customer names and other confidential information, and demanded that GCP immediately return all SFS confidential and/or trade secret information. (*Id.*)

---

[4] SFS asserted in its July 22, 2014 letter that Farrell possessed "copies of quotes, delivery tickets, invoices, packing slips, price books and catalogs, which were the property of SFS and that were not turned in when he dropped off his vehicle and company inventory." (Compl. ¶ 40.)

[5] A copy of SFS's letter to Farrell is attached to Plaintiff's Complaint as Exhibit B.

[6] A copy of the GCP Cease and Desist Letter is attached to Plaintiff's Complaint as Exhibit C.

{14} On August 5, 2014, counsel for GCP and Farrell admitted that "Farrell had taken with him when he left SFS property belonging to SFS and/or its customers, including confidential business information, such as SFS manuals, customer orders, and price books." (Compl. ¶¶ 44–45, Ex. D.)[7] Counsel further advised in that same correspondence that Farrell had "discarded approximately seven (7) boxes of SFS documents, records, information and other property in his 'local dump.'" (Compl. ¶ 45.)

{15} SFS alleges that as of the filing of the Complaint, over forty (40) current SFS customers had been contacted by Farrell or other representatives of GCP with Farrell's assistance and that seventeen (17) SFS customers either no longer do business with SFS or significantly reduced their buying from SFS during what typically is the peak season in the framing and remodeling market. (Compl. ¶¶ 47–48.)

{16} On September 20, 2014, SFS filed its Verified Complaint and Motion for Preliminary and Permanent Injunctive Relief in Buncombe County, alleging claims against Defendants in various combinations for (1) misappropriation of trade secrets – N.C. Gen. Stat § 66-152, et seq. ("misappropriation") (all Defendants); (2) breach of Non-Disclosure Agreement (Farrell); (3) conspiracy (all Defendants); (4) tortious interference with contract (GCP); (5) fraud (Farrell); (6) conversion (all Defendants); (7) unjust enrichment (all Defendants); (8) unfair and deceptive trade practices (all Defendants); and (9) punitive damages (all Defendants).

{17} GCP and Farrell filed this Motion on November 25, 2014, and briefing was completed on January 5, 2015. The Court held a hearing in this matter on January 8, 2015, at which all parties were represented by counsel.

{18} SFS filed a Suggestion of Subsequently Decided Authority pursuant to Business Court Rule 15.9 on February 9, 2015. The Motion is now ripe for resolution.

---

[7] A Copy of GCP's letter to SFS is attached to Plaintiff's Complaint as Exhibit D.

## II.

## LEGAL STANDARD

{19}   The overarching question for the Court on a motion to dismiss under N.C. R. Civ. P. Rule 12(b)(6) is "whether as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of North Carolina*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979)). Furthermore, "the complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000). Factual allegations must be accepted as true; however, bare legal conclusions are "not entitled to a presumption of truth." *Miller v. Rose,* 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000).   Additionally, all averments of fraud must be pled with particularity.  N.C. Gen. Stat. § 1A-1, Rule 9(b) (2015).

## III.

## ANALYSIS

A. Trade Secrets Misappropriation

{20}   To adequately plead a claim for misappropriation of trade secrets under the North Carolina Trade Secrets Protection Act ("TSPA"), "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 364 (2004) (citing *Analog Devices, Inc., v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003)).  The plaintiff must also allege "the acts by which the misappropriation was accomplished." *Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv.*, 2015 NCBC 12 ¶ 27 (N.C. Super. Ct. Feb. 4, 2015), www.ncbusinesscourt.net/opinions/2015_NCBC_12.pdf.   "[A] complaint that makes general allegations in sweeping and conclusory statements,

without specifically identifying the trade secrets allegedly misappropriated, is 'insufficient to state a claim for misappropriation of trade secrets.'" *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 585–86 (2008).

{21} The TSPA defines a "trade secret" as business or technical information that 1) "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development" and 2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C. Gen. Stat. § 66-152(3) (2014). Furthermore, "misappropriation" is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152(1).

{22} Defendants contend that SFS's claim is fatally deficient because SFS has "failed to identify adequately" its alleged trade secrets, the information SFS seeks to protect is "public information that is readily available from the vendors and customers and potential customers," and SFS has "failed to identify any steps that it took to keep such information a secret." (Defs.' Reply, p. 2–5.) The Court disagrees.

{23} First, as to the adequacy of SFS's identification of its alleged trade secrets, SFS alleges that Defendants have misappropriated SFS's trade secret information, including "confidential customer information such as customer contact information and customer buying preferences and history . . . confidential freight information, sales reports, prices and terms books, sales memos, sales training manuals, commission reports, and information concerning SFS's relationship with its vendors." (Compl. ¶ 62.) The North Carolina courts have regularly found this sort of information – described with the level of specificity offered by SFS here – to constitute protectable trade secrets under the TSPA for Rule 12(b)(6) purposes. *See, e.g., Koch Measurement Devices, Inc. v. Armke*, 2013 NCBC 48 ¶ 19 (N.C. Super. Ct. Oct. 14, 2013), www.ncbusinesscourt.net/opinions/2013_NCBC_48.pdf (holding

"customer lists, including names, contact persons, addresses, phone numbers, customer ordering habits and history, and company pricing and inventory management strategies" described protectable trade secrets under Rule 12(b)(6)); *see also, e.g., GE Betz, Inc. v. Conrad*, 752 S.E.2d 634, 649 (N.C. Ct. App. 2013) (holding "pricing information, customer proposals, historical costs, and sales data" sufficient to identify trade secrets); *Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 174 N.C. App. 49, 53, 620 S.E.2d 222, 226 (2005) (holding trade secrets may include "cost history information; price lists; and confidential customer lists, pricing formulas and bidding formulas"); *Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 375, 542 S.E.2d 689, 692 (2001) (holding historical "data regarding operating and pricing policies can also qualify as trade secrets" when used competitively); *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 174, 423 S.E.2d 324, 327 (1992) (holding customer lists and pricing and bidding formulas trade secrets under TSPA); *Philips Elecs. N. Am. Corp. v. Hope*, 631 F. Supp. 2d 705, 721 (M.D.N.C. 2009) ("Customer pricing lists, cost information, confidential customer lists, and pricing and bidding formulas may constitute trade secrets.").

{24} The North Carolina cases principally relied upon by Defendants – *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 585–86 and *AECOM Tech. Corp. v. Keating*, 2012 NCBC 10 ¶ 21 (N.C. Super. Ct. Feb. 6, 2012), www.ncbusinesscourt.net/opinions/2012_NCBC_10.pdf – do not compel a contrary conclusion. Rather, the Court finds that SFS's description of its alleged trade secrets here contains more detail and context than the descriptions found lacking in either *Washburn* or *AECOM*. *See Washburn,* 190 N.C. App. at 327, 660 S.E.2d at 585–86 (holding insufficient "business methods; clients, their specific requirements and needs; and other confidential information pertaining to [plaintiff's] business"); *AECOM*, 2012 NCBC 10 ¶ 21 (holding insufficient "customer lists, customer contact information, pricing information and product information").

{25} Moreover, Business Court Judge McGuire, in reviewing relevant complaint allegations and NDA terms in another case involving SFS that are nearly identical

to those at issue here, recently concluded in a persuasive unpublished Order on Motion for Protective Order in *Southern Fastening Systems, Inc. v. Duo-Fast Carolinas, Inc.*, No. 14 CVS 8372 (N.C. Super. Ct. February 9, 2015), that SFS had sufficiently identified its trade secrets to require the defendant to respond to discovery – a more difficult legal hurdle for SFS than simply to survive dismissal under Rule 12(b)(6), which is its challenge here.

{26} For these reasons, therefore, the Court concludes that SFS has identified its trade secrets sufficiently to defeat Defendants' motion under Rule 12(b)(6).

{27} As to the allegedly public nature of the alleged trade secrets and Plaintiff's alleged failure to maintain the confidentiality of its trade secret information, the Court concludes that Defendants have not shown that either contention is established on the face of SFS's Complaint. To the contrary, SFS alleges that its trade secrets consist of specific, detailed, non-public information regarding SFS's current and potential customers which is not generally known within SFS or capable of reverse engineering and which SFS does not (and did not) disseminate to its employees, including Farrell, unless the employee first executes a NDA restricting disclosure and requiring return of the information upon request or termination of employment. (Compl. ¶¶ 19–30, 67, 72.) Therefore, the Court concludes that, for the purposes of this Rule 12(b)(6) analysis, SFS has adequately pled that its alleged trade secrets are not public information and are "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy." N.C. Gen. Stat. § 66-152(3).

{28} In light of the foregoing, and based on its review of the totality of the Complaint in the light most favorable to Plaintiff, the Court concludes that SFS has adequately pled its claim under the TSPA and that Defendants' Motion to Dismiss SFS's claim for misappropriation of trade secrets should be denied.

B. Breach of NDA

{29} To state a claim for breach of contract, a plaintiff must allege the existence of a valid contract. *Birtha v. Stonemor, N.C., LLC*, 220 N.C. App. 286, 296, 727 S.E.2d 1, 9 (2012) ("To state a claim for breach of contract, the complaint must

allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach."). A valid contract requires adequate consideration. *Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 11, 652 S.E.2d 284, 292 (2007).

{30} Farrell contends that because the NDA has the practical effect of prohibiting him from working for SFS's competitor, the NDA is in reality a restrictive covenant and therefore is unenforceable because it is not supported by valuable consideration and does not contain reasonable time and territory restrictions. (Defs.' Br. Supp. Mot., pp. 6–8; Defs.' Reply, pp. 6–9 (citing *Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 597, 632 S.E.2d 563, 571 (2006) (holding restrictive covenants must be "(1) in writing (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory; and (5) not against public policy").)

{31} SFS argues in response that the NDA is simply a non-disclosure agreement – and not a restrictive covenant in restraint of trade under N.C. Gen. Stat. § 75-4. (Pl.'s Resp. Defs.' Mot., pp. 13–14 (citing *Chemimetals Processing v. McEneny*, 124 N.C. App. 194, 197, 476 S.E.2d 374, 376 (1996) ("An agreement is not in restraint of trade, however, if it does not seek to prevent a party from engaging in a similar business in competition with the promisee, but instead seeks to prevent the disclosure of confidential information.").) As such, SFS contends that the omission of a time and territory provision is not fatal to the NDA's enforceability, and that SFS provided valuable consideration for the NDA in the form of continued employment and access to SFS's confidential information.

{32} The Court thus must first determine whether the NDA is a restrictive covenant under N.C. Gen. Stat. § 75-4. "Contract interpretation is a matter of law." *Shelton v. Duke Univ. Health Sys.*, 179 N.C. App. 120, 123, 633 S.E.2d 113, 115 (2006). As an initial matter, Plaintiff has not pled in the Complaint any facts that suggest that Farrell is restricted from working for GCP or any other competitor.

{33} Moreover, "[i]f the plain language of the contract is clear, the intention of the parties is inferred from the words of the contract." *State v. Philip Morris USA*

*Inc.*, 363 N.C. 623, 631, 685 S.E.2d 85, 90 (2009). The Court finds that the plain language of the NDA restricts Farrell in two respects – first, he must not disclose SFS's Confidential Information except as authorized, and second, he must return SFS's Confidential Information upon request or termination of his employment. Based on the language in the NDA, the Court cannot conclude as a matter of law, as Farrell urges, that these restrictions necessarily prohibit Farrell from working for SFS's competitors or for any other entity. To the contrary, the contract language is plain and unambiguous and permits Farrell to work for any person or entity provided he does not disclose SFS's Confidential Information.

{34} As a result, the Court concludes that the NDA is not a restrictive covenant subject to the requirements of N.C. Gen. Stat. § 75-4. *See, e.g., Chemimetals*, 124 N.C. App. at 197, 476 S.E.2d at 376; *Static Control Components, Inc. v. Darkprint Imaging, Inc.*, 135 F. Supp. 2d 722, 730 (M.D.N.C. 2001), *abrogated by statute on other grounds as stated in Procaps S.A. v. Pantheon Inc.*, 2015 U.S. Dist. LEXIS 49495 (S.D. Fl. Apr. 15, 2015) ("[U]nlike a noncompete agreement, an agreement is not in restraint of trade if its seeks to prevent the disclosure or use of confidential information.") (applying North Carolina law).

{35} The Court next turns to whether the NDA is unenforceable for failure of consideration or lack of a time and territory restriction. First, as to consideration, courts have held that "'[e]mployment contracts which are terminable at will may be modified at any time by either party with the continuance of the relationship serving as the consideration for the modification.'" *Fraver v. N.C. Farm Bureau Mut. Ins. Co.*, 69 N.C. App. 733, 738, 318 S.E.2d 340, 344 (1984); *Robinson v. Ladd Furniture, Inc.*, 1993 U.S. App. LEXIS 14252, *9 (4th Cir. June 14, 1993) (unpublished) (continuance of employment relationship is sufficient consideration for an employment agreement in North Carolina to be enforceable); *see also Bradshaw v. Alpha Packaging, Inc.*, 2010 Ark. App. 659, *8, 379 S.W.3d 536, 540 (2010) (continued employment serves as consideration for a confidentiality agreement signed by employees after they were hired).

{36} The Court need not determine, however, whether North Carolina law recognizes continued employment to be consideration for a confidentiality agreement because SFS points to additional consideration here – Farrell's access to new confidential information of SFS in exchange for his agreement to the NDA. Our Court of Appeals has suggested that such access can constitute consideration for a non-disclosure agreement. *See MSC Indus. Direct Co. v. Steele*, 2009 N.C. App. LEXIS 1307, *14 (N.C. Ct. App. Aug. 18, 2009) (unpublished) ("There was no new information entrusted to defendant, therefore, this does not constitute valid consideration."); *see also, e.g., Weeco Int'l, Inc. v. Superior Degassing Servs.*, 2011 U.S. Dist. LEXIS 67889, *20–21 (S.D. Tex. June 24, 2011) (unpublished) ("An employee's promise not to disclose confidential information in exchange for the employer's performance of its promise to provide access to confidential information, is consideration to support a valid contract.") (applying Texas law). Accordingly, based on the facts pled in the Complaint, the Court concludes that the NDA is not invalid for lack of consideration.

{37} Addressing next Farrell's time and territory argument, the Court notes that a non-disclosure contract provision may be upheld under North Carolina law "even when the agreement is unlimited as to time and area upon a showing that it protects a legitimate business interest" of the employer. *Chemimetals,* 124 N.C. App. at 197, 476 S.E.2d at 377. Here SFS alleges that it "requires every employee to sign a [NDA] at the start of their employment to protect both the company's and the customers' confidential data." (Compl. ¶ 22.) "[P]rotection of customer relationships and goodwill against misappropriation by departing employees is well recognized as a legitimate protectable interest of the employer." *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 651, 370 S.E.2d 375, 381 (1988). Moreover, SFS has alleged that it only makes its trade secret information available to its employees, including to Farrell here, after the employees sign a NDA. *Cf. MSC*, 2009 N.C. App. LEXIS 1307 at *14 (finding no consideration where employer did not entrust new information to the employee after he signed a non-compete agreement). As such, the Court concludes that SFS has alleged that the NDA protects a legitimate

business interest of SFS and the omission of a time and territory provision in the NDA is therefore not fatal to SFS's claim.

{38} Accordingly, the Court concludes that SFS has adequately pled its claim for breach of contract for purposes of Rule 12(b)(6) and Defendants' Motion to Dismiss this claim should be denied.

C. Civil Conspiracy

{39} "A claim for civil conspiracy consists of: (1) an agreement between two or more persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement results in injury to the plaintiff." *Di Frega v. Pugliese*, 164 N.C. App. 499, 505–06, 596 S.E.2d 456, 461 (2004). There is no separate cause of action for civil conspiracy; the claim is instead premised on the underlying act. *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72–73 (2008). If the underlying acts supporting a claim for conspiracy are dismissed, so too must the claim for conspiracy be dismissed. *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007).

{40} SFS alleges that "GCP and Farrell conspired and agreed to the wrongful actions, failures to act, material misrepresentations, and concealments described herein, and acted in concert with each other to achieve them," (Compl. ¶ 86), and that "the agreement and plan of GCP and Farrell was intended to diminish the contractual rights of plaintiff under the Farrell NDA and otherwise to harm the business, rights and interests of SFS." (Compl. ¶ 87.) Moreover, the Court finds that SFS alleges facts supporting its contentions that Farrell improperly disclosed its confidential and/or trade secret information to GCP and that Farrell and GCP acted together to solicit and convert to GCP a large number of SFS's customers using that information, which caused SFS to suffer money damages. (Compl. ¶¶ 46–49, 74, 88.) *See, e.g., Shope v. Boyer*, 268 N.C. 401, 405, 150 S.E.2d 771, 774 (1966) (complaint for civil conspiracy must allege facts, rather than conclusions, that conspiracy existed). Based on these allegations and the Court's review of the Complaint in the light most favorable to Plaintiff, the Court finds SFS has

adequately pled its claim for civil conspiracy and that Defendants' Motion to Dismiss this claim should be denied.

D. Tortious Interference with Contract

{41} To state a claim for tortious interference with contract, a plaintiff must show: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Labs.,* 322 N.C. at 661, 370 S.E.2d at 387.

{42} Justification does not exist for interference with a contract when the interference is done for a "wrong purpose," which "exists where the act is done other than as a reasonable and *bona fide* attempt to protect the interests of the defendant which is involved." *Peoples Sec. Life Ins. Co. v. Hooks,* 322 N.C. 216, 220, 367 S.E.2d 647, 650 (1988) (quoting *Smith v. Ford Motor Co.,* 289 N.C. 71, 91, 221 S.E.2d 282, 294 (1976) (emphasis in original)). North Carolina courts have held that "competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." *Id.* at 221, 367 S.E.2d at 650; *Childress v. Abeles,* 240 N.C. 667, 676, 84 S.E.2d 176, 183 (1954). A claim for tortious interference with contract must "allege facts demonstrating that defendants' actions were not prompted by legitimate business purposes." *Embree Constr. Grp. v. Rafcor, Inc.,* 330 N.C. 487, 500, 411 S.E.2d 916, 926 (1992) (citation and quotation omitted).

{43} GCP argues that dismissal is required because there is no valid contract between Farrell and SFS, SFS has not identified a "single valid contract between SFS and any of its clients and customers with which GCP interfered, and, in any event, SFS has not pled that GCP "'acted with no motive other than malice.'" (Defs.' Br. Supp. Mot., pp. 9–10) (quoting *McElmurry v. Alex Fergusson, Inc.,* 2006 U.S. Dist. LEXIS 10760, *50 (M.D.N.C., Mar. 8, 2006)). The Court disagrees.

{44}    First, the Court has previously concluded that SFS has alleged that a valid contract existed between Farrell and SFS so Defendants' argument on this basis fails.  Next, SFS attaches exhibits to its Complaint listing over 40 customers that it contends GCP and Farrell have contacted and 17 customers it claims it has lost to GCP due to Defendants' misconduct.  That these customers may have had at will relationships with SFS does not defeat SFS's claim.  *See, e.g., Childress,* 240 N.C. at 678, 84 S.E.2d at 184 ("The fact that plaintiff's contract with the Trogdon Furniture Company was terminable at will is not available as a defense to the defendants [on plaintiff's tortious interference claim].").

{45}    Finally, our courts have made clear that "malice" for purposes of a claim for tortious interference with contract is "legal malice" rather than "actual malice" and "denotes the intentional doing of the harmful act without legal justification." *Childress*, 240 N.C. at 675, 84 S.E.2d at 182; *see, e.g., Reichhold Chems., Inc. v. Goel*, 146 N.C. App. 137, 149, 555 S.E.2d 281, 288 (2001) ("[L]egal malice demonstrates a lack of justification in an action for tortious interference").  It is clear from the face of the Complaint that SFS alleges facts showing that GCP has improperly acquired, disclosed and used SFS's confidential and trade secret information "to sell GCP products at prices below SFS's prices in order to block SFS from those customer accounts" and to cause SFS financial damage.  (Compl. ¶ 46.)  As such, SFS has adequately alleged that GCP acted for a "wrong purpose" and thus without legal justification.  *See, e.g., Childress*, 240 N.C. at 675, 84 S.E.2d at 182; *see also Safety Test & Equip. Co. v. Am. Safety Util. Corp.*, 2015 NCBC 37 ¶ 80 (N.C.         Super.         Ct.         Apr.         23,         2015), www.ncbusinesscourt.net/opinions/2015_NCBC_37.pdf  (anti-competitive   conduct not  legal  justification); *Peoples*, 322 N.C. at 221, 367 S.E.2d at 650 ("If the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified.").  Therefore, the Court concludes that SFS has stated a claim for tortious interference with contract and that Defendant's Motion to Dismiss this claim should be denied.

E. Fraud

{46} To state a claim for fraud, a plaintiff must allege that a defendant made a "(1) false representation or concealment of material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Harrold v. Dowd*, 149 N.C. App. 777, 782, 561 S.E.2d 914, 918 (2002) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). Rule 9(b) requires that all averments of fraud must be pled specifically and with particularity, including as to the "time, place and content of the fraudulent misrepresentation, [the] identity of the person making the representation and what was obtained as a result of the fraudulent act or representation." *Powell v. Wold*, 88 N.C. App. 61, 64, 362 S.E.2d 796, 797 (1987).

{47} SFS alleges that "Farrell purposely communicated material false and/or misleading statements and representations to and/or concealed material information from SFS concerning his intentions to work for GCP and the fact that he kept in his possession confidential business information and Trade Secrets of SFS." (Compl. ¶ 96.) SFS also alleges specific facts suggesting that Farrell told a vendor that he was going to leave SFS, (Compl. ¶ 34), that he thereafter told SFS on two occasions that he had not made up his mind whether to leave SFS under circumstances SFS contends show that his statements were lies, (Compl. ¶¶ 35, 37), that he then announced his departure from SFS the day before he began work with GCP, (Compl. ¶ 38), that he took SFS's confidential business information upon his departure in violation of his duties under his NDA, (Compl. ¶ 44), and that he claims to have destroyed such information but only after SFS demanded its immediate return, (Compl. ¶ 44). The Court, however, does not read SFS's current Complaint as stating facts that tend to show that SFS relied on Farrell's representations or omissions – indeed, SFS avers no facts asserting how SFS would have acted any differently had it known of the truth of the alleged representations or omissions – or that the alleged representations or omissions have caused SFS actual damage. Accordingly, the Court concludes that SFS's fraud claim should be dismissed without prejudice with the opportunity to re-file the fraud claim with

factual allegations that satisfy both Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure.

F. Conversion

{48} "[C]onversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.,* 192 N.C. App. 74, 86, 665 S.E.2d 478, 488 (2008) (internal quotation marks omitted). There are two essential elements in a conversion claim: (1) ownership in the plaintiff, and (2) a wrongful possession or conversion by the defendant. *Id.* at 86, 665 S.E.2d at 489; *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012).

{49} SFS alleges that Farrell conceded through his prior legal counsel that when he left SFS he "had taken with him SFS property belonging to SFS and/or its customers, including confidential business information such as SFS manuals, customer orders, and price books," (Compl. ¶ 44), and that Farrell's prior counsel admitted that Farrell "discarded approximately seven (7) boxes of SFS documents, records, information and other property in his 'local dump,'" (Compl. ¶ 45). SFS also alleges that Farrell took the names and contact information for current and potential customers that were stored on his mobile phone and the computer system. (Compl. ¶ 106.)

{50} Defendants argue that dismissal is appropriate because under North Carolina law, "intangible interests such as business opportunities and expectancy interests" are not subject to a conversion claim, *Norman v. Nash Johnson & Sons' Farms, Inc.,* 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000). SFS's allegations make very clear, however, that more than intangible interests are at stake here. Indeed, SFS has alleged that Farrell removed from SFS's premises and then destroyed approximately seven boxes of SFS documents and other information and that Farrell absconded with important information concerning its current customers. Based on the Court's review of the Complaint in the light most

favorable to Plaintiff, the Court concludes that SFS has stated a claim for conversion and that Defendants' Motion to Dismiss Plaintiff's claim should be dismissed.

G. Unjust Enrichment

{51} When a party "confers a benefit upon another which is not required by a contract either express or implied or a legal duty, the recipient thereof is often unjustly enriched and will be required to make restitution therefor." *Progressive Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 184 N.C. App. 688, 695, 647 S.E.2d 111, 116 (2007). To state a claim for unjust enrichment, a plaintiff must establish "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co.*, 211 N.C. App. 252, 259–60, 712 S.E.2d 670, 677 (2011).

{52} SFS alleges facts showing that Defendants benefited from the use of SFS's confidential information and trade secrets, including by using SFS's confidential information to contact SFS customers in order to undercut SFS's pricing and freight costs in a successful effort to persuade at least 17 customers to buy from GCP rather than continue to purchase from SFS. (Compl. ¶¶ 65, 113.) SFS further alleges that Defendants obtained these benefits as a result of Defendants' wrongful misappropriation and misuse of SFS's confidential information and trade secrets, (Compl. ¶ 110), and that SFS did not consent or authorize Defendants' use, (Compl. ¶¶ 41, 43). The Court concludes, therefore, that SFS has sufficiently alleged a claim for unjust enrichment and that Defendants' Motion to Dismiss this claim should be denied.

H. Unfair and Deceptive Trade Practices

{53} A plaintiff may state a UDTP claim by alleging: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 373–74, 555 S.E.2d 634, 642 (2001). While it is true, as Defendants contend, that a mere breach of contract cannot form the

basis for a UDTP claim, *Lake Mary L.P. v. Johnston*, 145 N.C. App. 525, 533, 551 S.E.2d 546, 553 (2001), our courts have long recognized that claims for misappropriation of trade secrets and tortious interference with contract may form the basis of a UDTP claim, *Drouillard*, 108 N.C. App. at 172–73, 423 S.E.2d at 326–27; *United Labs.*, 322 N.C. at 665, 370 S.E.2d at 389. Because the Court has concluded that SFS's claims for trade secret misappropriation and tortious interference should survive Defendants' Motion to Dismiss, so should SFS's claim for UDTP as pled here. The Court therefore concludes that Defendants' Motion to Dismiss SFS's UDTP claim should be denied.

I. <u>Punitive Damages</u>

{54} "Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) [f]raud (2) [m]alice (3) [w]illful or wanton conduct." N.C. Gen. Stat. § 1D-15 (2014). Because SFS has sufficiently pled several claims for which it seeks compensatory damages and has further alleged that Defendants' conduct was "intentional, willful, wanton, and malicious," (Compl. ¶¶ 120–21), the Court concludes SFS's claim for punitive damages should survive at this stage of the proceedings.

J. <u>Preliminary and Permanent Injunctive Relief</u>

{55} Finally, Defendants seek dismissal of SFS's First Claim for Relief – subtitled as a "Motion for Preliminary and Permanent Injunctive Relief" – contending that SFS "cannot show either a likelihood of success on the merits or irreparable harm." (Def.'s Br. Supp. Mot., p. 17.) Defendants' arguments, however, appear to be more focused on whether SFS can bring forward sufficient evidence to support the entry of injunctive relief under Rule 65 – the Court's proper focus on a motion for injunctive relief – than on whether SFS's allegations state a claim under Rule 12(b)(6) – the issue before the Court on Defendants' Motion.[8] Viewing the

---

[8] Although captioned as a "motion," SFS has not filed its "motion" in a "separate paper" or with a brief, as required under Business Court Rule 15.2, and, in any event, SFS indicated at the hearing

allegations of the Complaint in the light most favorable to Plaintiff, the Court concludes that SFS has sufficiently pled facts that, if proven, would entitle SFS to injunctive relief. *See, e.g., Travenol Labs., Inc. v. Turner*, 30 N.C. App. 686, 692, 228 S.E.2d 478, 483 (1976) ("It is well settled that an injunction will issue to prevent unauthorized disclosure and use of trade secrets and confidential information."). Accordingly, the Court concludes that Defendants' Motion to Dismiss SFS's claims for injunctive relief should be denied.

IV.

CONCLUSION

{56}  Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss and hereby **DISMISSES** Plaintiff's claim for fraud without prejudice.

{57}  All other requested relief is **DENIED**.

**SO ORDERED**, this the 28th day of April 2015.

---

that it does not seek preliminary injunctive relief at this time and in its Complaint that permanent injunctive relief would only be appropriate following a jury's determination of Defendants' liability in this matter. As a result, the Court concludes that no motion for injunctive relief is properly before the Court at this time.