AmeriGas Propane, L.P. v. Coffey, 2015 NCBC 93.

STATE OF NORTH CAROLINA

MADISON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 376

AMERIGAS PROPANE, L.P. and
AMERIGAS PROPANE, INC.,

            Plaintiffs,

v.

ERMON CLARK COFFEY and MARSH
L.P. GAS, INC.,

            Defendants.

ORDER AND OPINION ON
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

{1}    **THIS MATTER** is before the Court upon Defendants Ermon Clark Coffey's ("Coffey") and Marsh L.P. Gas, Inc.'s ("Marsh") (collectively, "Defendants") Motions for Summary Judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure (the "Motions") in the above-captioned case. After consideration of the Motions, affidavits, supporting briefs, as well as the arguments of counsel at the April 7, 2015 hearing on this matter, the Court hereby **GRANTS** Marsh's Motion for Summary Judgment and **GRANTS** Coffey's Motion for Summary Judgment.

    *Ellis & Winters, LLP, by Paul K. Sun and Kelly Margolis Dagger, for Plaintiffs AmeriGas Propane, L.P. and AmeriGas Propane, Inc.*

    *Yates, McLamb & Weyher, LLP, by Rodney E. Pettey and Brian M. Williams, and Everett Gaskins Hancock, LLP, by E.D. Gaskins, Jr. and James W. Hash, for Defendant Marsh L.P. Gas, Inc.*

    *Davis & Hamrick, LLP, by H. Lee Davis, Jr. and Katherine M. Barber-Jones, for Defendant Ermon Clark Coffey.*

Bledsoe, Judge.

I.

PROCEDURAL HISTORY

{2}     Plaintiffs AmeriGas Propane, L.P. ("AmeriGas LP") and AmeriGas Propane, Inc. ("AmeriGas Inc.") (unless individually identified, collectively "AmeriGas" or "Plaintiffs") initiated this action on August 29, 2013, alleging claims against Coffey for breach of contract, against Marsh for tortious interference, and against both Coffey and Marsh for misappropriation of trade secrets and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

{3}     On September 23, 2013, this Court (Jolly, J.) entered a Consent Temporary Restraining Order (the "TRO").  AmeriGas filed a Motion for Preliminary Injunction on November 1, 2013, and on February 11, 2014, Judge Jolly dissolved the TRO and denied AmeriGas's Motion for Preliminary Injunction.  *See AmeriGas Propane, LP v. Coffey*, 2014 NCBC LEXIS 4 (N.C. Super. Ct. Feb. 11, 2014).

{4}     Coffey and Marsh filed their respective Motions on November 18, 2014. After this Court (McGuire, J.) entered a Case Management Order on December 18, 2014 to allow AmeriGas an opportunity to conduct supplemental discovery through and including January 30, 2015 under Rule 56(f) of the North Carolina Rules of Civil Procedure, both Defendants renewed their Motions on January 28, 2015.

{5}     This Court (Bledsoe, J.) held a hearing on the Motions on April 7, 2015, at which all parties were represented by counsel.[1]   The Motions are now ripe for resolution.[2]

II.

FACTUAL BACKGROUND

{6}     While findings of fact are not necessary or proper on a motion for summary judgment, "it is helpful to the parties and the courts for the trial judge to articulate a

---

[1] At the hearing, the Court requested supplemental briefing on the effect of Coffey's involuntary termination on the enforceability of the restrictive covenants contained in the Post-Employment Agreement.  The parties submitted supplemental briefs on April 21, 2015.

[2] After the hearing, the parties requested the Court to delay resolution of the Motions pending the outcome of the parties' settlement discussions and upcoming mediation.  The mediator advised the Court on July 8, 2015 that the parties had been unable to reach a settlement.

summary of the material facts which he considers are not at issue and which justify entry of judgment." *Collier v. Collier*, 204 N.C. App. 160, 161–62, 693 S.E.2d 250, 252 (2010). Therefore, the Court limits its recitation to the undisputed material facts necessary to decide the Motions, and not to resolve issues of material fact.

{7} AmeriGas LP is a Delaware limited partnership authorized to conduct business in North Carolina. (Am. Compl. ¶ 4.) AmeriGas Inc. is a Pennsylvania corporation authorized to conduct business in North Carolina. (Am. Compl. ¶ 5.) AmeriGas sells propane gas to over two million residential and commercial customers nationwide. (Am. Compl. ¶ 12.)

{8} Coffey is a resident of Madison County, North Carolina (Coffey Dep. 24:3, Oct. 9, 2013.) Before working for AmeriGas, Coffee was employed as a truck driver by Shaw L.P. Gas ("Shaw"). (Coffey Dep. 29:16–23.) Shaw was a wholly-owned subsidiary of Heritage Operating, L.P. ("Heritage").

{9} On January 12, 2012, AmeriGas acquired all outstanding equity interests in Shaw through its merger with Heritage. (Shockley Aff. ¶ 3, Aug. 27, 2013.) Following the merger, Coffey entered into a Confidentiality and Post-Employment Agreement with AmeriGas ("Post-Employment Agreement"). (Marsh's Mot. Summ. J. Ex. B., hereinafter "Post-Employment Agr.", ¶ 3a.) AmeriGas alleges that Heritage employees were not required to sign the Post-Employment Agreement, but those who did became eligible for wage increases and bonuses. (Corrected Second Ranson Aff., hereinafter "Ranson Aff.", ¶ 2, Nov. 14, 2013.)

{10} Coffey's Post-Employment Agreement contains three provisions that are the subject of this litigation: a non-competition provision, a non-solicitation provision, and a non-disclosure provision. The non-competition provision provides that Coffey "will not directly or indirectly sell or provide propane or any other goods or services sold or provided by AmeriGas as of the date of the termination of [his] employment to any AmeriGas Customer . . . ." (Post-Employment Agr. ¶ 4b.) The non-solicitation provision prohibits Coffey from "directly or indirectly solicit[ing] the business of any AmeriGas Customer" for two years after the termination of Coffey's employment with AmeriGas. (Post-Employment Agr. ¶ 4a.) The non-disclosure provision requires

Coffey to "protect the Confidential Information of AmeriGas and its predecessors and affiliates from disclosure" and "not, during or after [his] term of employment, divulge such Confidential Information or use it for the benefit of any person or entity not associated with AmeriGas." (Post-Employment Agr. ¶ 3a.)

{11}   After the AmeriGas merger with Heritage, Coffey's duties and interactions with customers remained substantially the same as they were with Shaw. (Third Coffey Aff. ¶ 6, Sept. 25, 2014; Coffey Dep. 37:13–17.) Coffey continued to work as a delivery representative for AmeriGas out of its Marshall, North Carolina office. (Third Coffey Aff. ¶ 6.) As a delivery representative, Coffey was responsible for delivering propane directly to customers, providing customers with delivery tickets for propane, and sometimes collecting customer payments. (Shockley Aff. ¶ 3.)

{12}   Coffey did not receive a bonus, increased benefits, or further training at the time of the AmeriGas-Heritage merger. (Third Coffey Aff. ¶¶ 6–8, 13.) Coffey did receive a raise on October 1, 2012, nearly nine months after he signed the Post-Employment Agreement, and a five hundred dollar bonus in January 2013. (Ranson Aff. ¶ 3.)

{13}   While at AmeriGas, Coffey had access to customer information AmeriGas contends is confidential, including the names, addresses, usage history, credit information, and prices charged for every customer serviced by AmeriGas's Marshall office. (Shockley Aff. ¶¶ 10–11; Holland Aff. ¶ 5, Mar. 2, 2015.) AmeriGas stores its customer information in a password-protected database that is accessible by only a limited number of AmeriGas employees, including formerly Coffey, (Shockley Aff. ¶ 10); however, a printout of the customer list was also kept at the Marshall office and was accessible to every AmeriGas Marshall office employee. (Shockley Aff. ¶ 11.) Coffey also retained in his memory much of AmeriGas's customer information. (Coffey Dep. 64:16–19, 72:14–73:19, 116:16–21.)

{14}   On May 3, 2013, AmeriGas terminated Coffey's employment, allegedly for smoking in his delivery truck. (Shockley Dep. 92:8–11, Oct. 17, 2013.) In late May 2013, Coffey secured employment with Marsh as a sales associate and driver. (Coffey

Dep. 85:10–13.) Marsh is a Tennessee corporation registered to conduct business in North Carolina, and is a competitor of AmeriGas. (Am. Compl. ¶ 7.)

{15} As a Marsh employee, Coffey was eligible to receive a tank set bonus. (Raby Dep. 87:13–88:11, Oct. 10, 2013.) On July 13, 2013, Coffey received a tank set bonus. (Coffey Dep. 90:3–7.) No other Marsh employee received a tank set bonus in 2013. (Coffey Dep. Ex. 42.)

{16} Plaintiffs contend that Coffey and Marsh have been using confidential information that Coffey acquired in the course of his employment with AmeriGas to solicit AmeriGas customers in contravention of the Post-Employment Agreement. In particular, AmeriGas alleges that Coffey stole the customer list printout from the Marshall office. (Shockley Dep. 38:22–40:8.) Coffey denies the theft of the customer list, however, and also claims he destroyed and never used at Marsh the printouts of customer information that he used as a delivery driver for AmeriGas. (Coffey Dep. 49:17–50:20.)

{17} On June 3, 2013, after learning of Coffey's alleged solicitations, AmeriGas sent a letter to Coffey reminding him of his obligations under the Post-Employment Agreement, although Coffey contends he never picked up the letter. (AmeriGas's Br. Opp. Defs.' Mots. Summ. J. Ex. 4.) On July 5, 2013, Marsh received a copy of the June 3 letter and a copy of Coffey's Post-Employment Agreement. (Shockley Aff. ¶ 9.) Coffey continued to work for Marsh thereafter. (Raby Dep. 88.)

{18} Between May 2013, when Marsh hired Coffey, and September 30, 2013, the date Judge Jolly entered the TRO, Marsh obtained 175 new customers, representing a ten percent increase in Marsh's total customer base. (Raby Dep. 44:14–23, Ex. 8.) Coffey estimated that he had acquired at least 100 customers for Marsh during that time frame. (Coffey Dep. 108:20–109:8.) By January 2015, Marsh had 288 customers in North Carolina who were not Marsh customers in May 2013 when AmeriGas terminated Coffey. (Holland Aff. ¶ 14, Exs. 1–3.) About two-thirds of those customers were former customers of AmeriGas. (Holland Aff. ¶ 14, Exs. 1–3.)

III.

LEGAL STANDARD

{19} Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. R. Civ. P. Rule 56(c) (2014). "A movant may meet its burden by showing either that: (1) an essential element of the non-movant's case is nonexistent; or (2) based upon discovery, the non-movant cannot produce evidence to support an essential element of its claim; or (3) the movant cannot surmount an affirmative defense which would bar the claim." *McKinnon v. CV Indus.*, 213 N.C. App. 328, 332, 713 S.E.2d 495, 499 (2011) (citations and internal quotation marks omitted.) "Once the moving party meets its burden, then the non-moving party must produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Cater v. Barker*, 172 N.C. App. 441, 444, 617 S.E.2d 113, 116 (2005) (citation and internal quotation marks omitted). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Whitley v. Cubberly*, 24 N.C. App. 204, 206–07, 210 S.E.2d 289, 291 (1974); *see generally McKee v. James*, 2014 NCBC LEXIS 74, at *13–14 (N.C. Super. Ct. Dec. 31, 2014) (discussing standard).

IV.

ANALYSIS

A.    Breach of Contract (Coffey)

{20} "A party asserting breach of contract must show: (1) existence of a valid contract; and (2) breach of the terms of that contract." *Cater*, 172 N.C. App. at 445, 617 S.E.2d at 116. The first inquiry is therefore whether the Post-Employment Agreement – specifically the non-competition, non-solicitation, and non-disclosure provisions – is a valid contract.

{21} "Our Courts have a long history of carefully scrutinizing . . . covenants that prevent an employee from competing with his former employer." *ChemiMetals*

*Processing v. McEneny*, 124 N.C. App. 194, 197, 476 S.E.2d 374, 376 (1996) (citing *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 649–50, 370 S.E.2d 375, 380 (1988); *Hartman v. W. H. Odell & Assocs.*, 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (1994), *disc. rev. denied*, 339 N.C. 612, 454 S.E.2d 251 (1995); and *Jewel Box Stores v. Morrow*, 272 N.C. 659, 663, 158 S.E.2d 840, 843 (1968)).  North Carolina law makes a distinction, however, between restrictive covenants, which "seek to prevent a party from engaging in a similar business in competition with the promisee," and thus restrain trade, and confidentiality agreements, which merely "seek[] to prevent the disclosure or use of confidential information," and do not restrain trade. *ChemiMetals*, 124 N.C. App. at 197, 476 S.E.2d at 376.

i.     <u>Non-Competition and Non-Solicitation Provisions</u>

{22}   As an initial matter, the Court concludes that the non-solicitation provision and the non-competition provision are both restrictive covenants, as they prohibit Coffey from soliciting AmeriGas customers or selling propane or other goods sold by AmeriGas to AmeriGas customers, and thus "seek to prevent [Coffey] from engaging in a similar business in competition with [AmeriGas]." *Id.*  Under North Carolina law, restrictive covenants must be "(1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory; and (5) not against public policy." *Id.*

{23}   Coffey argues that the non-competition and non-solicitation provisions are unenforceable because they are (i) not supported by consideration, (ii) unreasonably broad as to time and territory, and (iii) unreasonably broader than needed to protect the legitimate business interests of AmeriGas.  AmeriGas argues in response that (i) it provided consideration in the form of new employment or, in the alternative, new benefits and a guarantee that Coffey's wages would not be decreased for one year, (ii) both provisions are reasonable as to time and territory, and (iii) both provisions are designed to protect AmeriGas's customer relationships and good will.

{24}   The Court first addresses whether the non-competition and non-solicitation provisions are supported by consideration.  The Court finds AmeriGas's first argument – that it provided consideration to Coffey in the form of new employment –

unpersuasive. Judge Jolly set forth the applicable legal principles for the Court's present analysis in denying Plaintiffs' Motion for Preliminary Injunction:

> Although an offer of employment may serve as consideration for a restrictive employment provision, generally this will only work if (a) the employment agreement is signed at the beginning of the employment relationship or (b) if some new material consideration is provided. *See Estate of Graham v. Morrison,* 168 N.C. App. 63, 70 (2005) ("Past consideration . . . is not adequate consideration to support a contract." (citation omitted)); *see also Forrest Paschal Machinery Co. v. Milholen*, 27 N.C. App. 678, 686-687 (1975) ("[W]hen the relationship of employer and employee is already established without a restrictive covenant, any agreement thereafter not to compete must be in the nature of a new contract based upon a new consideration." (citations omitted) (internal quotation marks omitted)). Thus, signing a contract in exchange for continuing an employment relationship, without more, will not suffice as consideration.

> As such, an employment contract signed at the time of a business acquisition may only use employment with the acquiring company as consideration if the old employment relationship is deemed terminated as a result of the transaction. In this regard, North Carolina courts previously have stated that acquisition of another company by asset purchase will act as a termination of existing employment relationships, and existing employees of the acquired business do not necessarily become employees of the acquiring entity. *See, e.g., Calhoun v. WHA Med. Clinic, PLLC,* 178 N.C. App. 585, 597 (2006) (citing *QSP v. Hair*, 152 N.C. App. 174 (2002)); *see also Better Bus. Forms & Prods., Inc. v. Craver*, 2007 NCBC 34 (2007) ("[W]hen an employer sells its assets . . . the employment relationship has been terminated." *Id.* ¶ 38.). Depending on the circumstances of the particular acquisition, the new employment relationship may serve as consideration. *See Calhoun*, 178 N.C. App. at 588-89, 597 (finding that an asset purchase followed by the execution of new employment contracts provided sufficient consideration for restrictive covenants protecting the acquiring company); *see also QSP*, 152 N.C. App. at 178 ("QSP's [asset] buyout, once effective, would have left defendant unemployed but for QSP's offer of employment to defendant and defendant's subsequent acceptance. This offer . . . was an offer of new employment and therefore constituted valuable consideration.").

> On the other hand, acquisition of a business through a purchase of stock or other equity, which results in the purchase of ownership interests instead of specific assets, will not automatically terminate

existing employment relationships and therefore ordinarily will not constitute new employment for purposes of consideration. *See Covenant Equip. Corp. v. Forklift Pro, Inc.*, 2008 NCBC 10, ¶ 42, n.11.

*AmeriGas*, 2014 NCBC LEXIS 4, at *9–11.

{25}   It is undisputed that the AmeriGas-Heritage merger was accomplished through an equity purchase – not through an asset purchase – and that Coffey continued working in the Marshall office without interruption after the merger was completed. (Konowalczyk Aff. ¶ 3, Dec. 2, 2013; Woodward Aff. ¶¶ 5–6, Ex. B, Dec. 2, 2013.)   Judge Jolly concluded at the preliminary injunction stage that "Plaintiffs ha[d] not proffered sufficient evidence to support a conclusion that the Acquisition, as structured, terminated Coffey's employment with Heritage." *AmeriGas*, 2014 NCBC LEXIS 4, at *11.   The Court concludes that, after discovery, the sufficiency of Plaintiffs' proof remains unchanged, and that Plaintiffs have not brought forward evidence that Coffey's employment was terminated prior to his execution of the Post-Employment Agreement.   Therefore, the Court concludes as a matter of law that Coffey's employment with AmeriGas did not constitute consideration for the non-competition and non-solicitation covenants contained in the Post-Employment Agreement.

{26}   AmeriGas also argues that it provided Coffey several other forms of consideration for the restrictive covenants contained in the Post-Employment Agreement, including a guarantee that Coffey's wages would not decrease for one year, an entitlement to severance benefits, and a bonus and wage increase.   The Court concludes that these arguments also must fail.

{27}   First, AmeriGas's promises not to decrease Coffey's wages for one year and to provide severance benefits in the event he was terminated as a result of the merger within two years were promises made to Heritage – not Coffey – as these promises were contained in sections 5.24(j) and 3.19(g) of the Contribution and Redemption Agreement between Heritage and AmeriGas, and not in the Post-Employment Agreement with Coffey. (Konowalczyk Aff. ¶ 3.)   Indeed, by all accounts, AmeriGas's promises were made for the benefit of all Heritage's employees – including those

employees who did not sign a Post-Employment Agreement – and therefore could not have been consideration for the Post-Employment Agreement with Coffey. (*See* Konowalczyk Aff. ¶ 5; Woodward Aff. Ex. B.) *See, e.g., Brown v. Owens*, 181 N.C. 18, 19, 105 S.E. 817, 817 (1921) ("A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration."); *see also, e.g., Puritan-Bennett Corp. v. Richter*, 657 P.2d 589, 592 (Kan. Ct. App. 1983) (noting that benefits provided to all employees, including those not signing a covenant not to compete, could not constitute consideration for an individual employee's covenant not to compete). Moreover, there is no evidence that Coffey was complicit in, or even aware of, AmeriGas's promises to Heritage.

{28}    Further, although Coffey became eligible for bonuses and wage increases under the Post-Employment Agreement, AmeriGas was not under any obligation to increase Coffey's compensation. (Ranson Aff. ¶ 2.) North Carolina law recognizes that "a raise, bonus, or other change in compensation; a promotion; additional training; . . . or some other increase in responsibility or number of hours worked" constitutes new or separate consideration to uphold a restrictive covenant agreed upon after a working relationship already exists. *Hejl v. Hood, Hargett & Assocs.*, 196 N.C. App. 299, 304, 674 S.E.2d 425, 428–29 (2009); *see also, e.g., Cox v. Dine-A-Mate, Inc.*, 129 N.C. App. 773, 778, 501 S.E.2d 353, 356 (1998) (continued employment is not sufficient consideration for a covenant not to compete where the employee receives "no change in compensation, commission, duties, nature of employment or other consideration in exchange for signing the employment agreement").

{29}    North Carolina law is also clear, however, that mere eligibility for discretionary raises does not constitute consideration to support a restrictive covenant. *See Malstrom, Inc. v. Warren*, 18 N.C. App. 199, 202, 196 S.E.2d 528, 530 (1973) (provision of contract that failed to impose an obligation on the employer to "increase or even refrain from decreasing the compensation to be paid" to the

employer is illusory consideration); *Milner Airco, Inc. v. Morris*, 111 N.C. App. 866, 870, 433 S.E.2d 811, 814 (1993) (illusory consideration found where "[t]he contract itself, while reciting consideration, actually [did] not bind the employer to any promise. . . . Unless and until 'the economy improved', no promotions were anticipated or promised."); *Wilmar, Inc. v. Liles*, 13 N.C. App. 71, 77, 185 S.E.2d, 278, 282 (1971) (contract that provided for the initiation of a profit sharing plan for the benefit of employees but was terminable at plaintiff's option did not constitute consideration for restrictive covenants).

{30}    Although Coffey received a wage increase and a bonus, there is no evidence that AmeriGas was under any obligation to increase Coffey's wages or pay him a bonus at the time he entered into the Post-Employment Agreement. As such, Coffey's eligibility for increased compensation in the Post-Employment Agreement does not constitute consideration for the restrictive covenants. *See Hejl*, 196 N.C. App. at 305, 674 S.E.2d at 429 ("Where the consideration is illusory, a party will not be bound to the agreement and the Court may set aside the contract for lack of consideration.").

{31}    Further, although Coffey received an hourly wage increase of two percent on October 1, 2012, almost nine months after he entered into the Post-Employment Agreement, and a five hundred dollar bonus in January 2013, there is no evidence that this increased compensation was related in any way to Coffey's agreement to the restrictive covenants in the Post-Employment Agreement. As a result, the Court concludes that the raise and bonus Coffey received some months after he signed the Post-Employment Agreement do not constitute consideration for the restrictive covenants in that Agreement. *See, e.g., James C. Greene Co. v. Kelley*, 261 N.C. 166, 169, 134 S.E.2d 166, 168 (1964) (finding no consideration for a restrictive covenant where "the defendant from time to time received increases in salary, [but] the evidence fail[ed] to relate any of them to the covenant not to compete"); *Morris*, 111 N.C. App. at 869–70, 433 S.E.2d at 813–14 (even where the employee executed the employment agreement in order to become an account manager "when the economy improved" and the employee actually did become an account manager, such

"potential" to become an account manager at the time the agreement was entered into did not constitute consideration for the employment agreement).

{32} Accordingly, the Court concludes that the non-competition and non-solicitation provisions in the Post-Employment Agreement are unenforceable for lack of consideration and that Coffey's Summary Judgment Motion on Plaintiffs' breach of contract claim should be granted as to the alleged breach of these two provisions.[3]

ii.     Non-Disclosure Provision

{33} As noted above, "an agreement is not in restraint of trade . . . if it does not seek to prevent a party from engaging in a similar business in competition with the promisee, but instead seeks to prevent the disclosure or use of confidential information." *ChemiMetals*, 124 N.C. App. at 197, 476 S.E.2d at 376. Unlike restrictive covenants, confidentiality agreements not in restraint of trade are enforceable so long as they are supported by consideration and protect a legitimate business interest of the employer. *Id.* at 197, 476 S.E.2d at 377.

{34} Here, the non-disclosure provision provides that Coffey "will not, during or after [his] term of employment, divulge [AmeriGas's] Confidential Information or use it for the benefit of any person or entity not associated with AmeriGas." (Post-Employment Agr. ¶ 3a.) Confidential Information is defined in the Post-Employment Agreement in relevant part as "information . . . concerning . . . past, present, and prospective customer identities, lists, credit information and gas usage patterns; [and] pricing and marketing policies and practices . . . ." (Post-Employment Agr. ¶ 2a.)

{35} Coffey makes three arguments against the enforceability of the non-disclosure provision: (i) it is not supported by consideration; (ii) it does not protect a legitimate business interest; and (iii) it cannot be enforced because Coffey was involuntarily terminated.

---

[3] In light of the Court's conclusion that the restrictive covenants are unenforceable because they are not supported by consideration, the Court elects not to address Coffey's argument that the restrictions are unenforceable because they are unreasonably broad as to territory and broader than necessary to protect AmeriGas's legitimate business interests.

{36}     Coffey first argues that the non-disclosure provision is not supported by consideration for the same reason as the non-competition and non-solicitation provisions – i.e., because continued employment cannot constitute consideration for the covenants.  AmeriGas asserts in response, citing *ChemiMetals*, that separate consideration is not required for non-restrictive covenants, including the non-disclosure provision at issue here.

{37}     Under North Carolina law, "[e]mployment contracts which are terminable at will may be modified at any time by either party with the continuance of the relationship serving as consideration for the modification."  *Fraver v. N.C. Farm Bureau Mut. Ins. Co.*, 69 N.C. App. 733, 738, 318 S.E.2d 340, 344 (1984) (internal quotation marks and citation omitted); *Robinson v. Ladd Furniture, Inc.*, No. 92-2286, 1993 U.S. App. LEXIS 14252, at *9 (4th Cir. June 14, 1993) (unpublished) (continuance of employment relationship is sufficient consideration for an employment agreement to be enforceable under North Carolina law).

{38}     Although the North Carolina appellate courts have not specifically addressed whether continued employment can constitute consideration for a confidentiality agreement, *see S. Fastening Sys. v. Grabber Constr. Prods.*, 2015 NCBC LEXIS 42, at *17–18 (N.C. Super. Ct. Apr. 28, 2015),[4] in *Sirona Dental, Inc. v. Smithson*, No. 3:14-cv-714-RJC-DSC, 2015 U.S. Dist. LEXIS 6080 (W.D.N.C. Jan. 20, 2015), a North Carolina federal district court, applying North Carolina law and citing *ChemiMetals* and *Robinson*, recently held that where a non-disclosure agreement "does not restrain trade, but rather seeks to prevent disclosure or use of confidential information; . . . new and additional consideration is not required."  The federal district court concluded that "[t]he continuance of [the employee's] employment relationship with [the employer] is sufficient consideration for an employment agreement in North Carolina to be enforceable."  *Id.* at *6.  The Court finds the reasoning in *Sirona Dental* consistent with *ChemiMetals* and concludes that a

---

[4]  The Court did not determine the issue in *Southern Fastening* because the plaintiff there pointed to additional consideration in exchange for his non-disclosure agreement – the defendant's access to new confidential information of plaintiff.  *Id.* at *18.  Here, however, AmeriGas has presented no evidence of consideration other than Coffey's continued employment.

confidentiality agreement need not be supported by additional consideration if the agreement does not constitute a restraint of trade.

{39} Accordingly, the Court must next consider whether the non-disclosure provision at issue here merely "seeks to prevent [Coffey's] disclosure or use of [AmeriGas's] confidential information," or is actually a restraint of trade that "seek[s] to prevent [Coffey] from engaging in a similar business in competition with [AmeriGas]." *ChemiMetals*, 124 N.C. App. at 197, 476 S.E.2d at 376–77. In undertaking this analysis, the Court is mindful that its research has not uncovered a North Carolina decision concluding that the non-disclosure provision at issue was actually a restraint of trade and thus properly analyzed as a restrictive covenant.[5] *ChemiMetals* makes clear, however, that the North Carolina courts will treat a non-disclosure agreement as a contract in restraint of trade in appropriate circumstances. *Id.*

{40} Although phrased as an agreement not to disclose or use confidential information, it is clear that AmeriGas's purpose in prohibiting Coffey's disclosure and use of AmeriGas's customer identities in the circumstances here is similar, if not identical, to the purpose intended by the unenforceable non-solicitation provision; i.e., to protect AmeriGas's customers from solicitation by Coffey, whether done individually or through a new employer. Indeed, it is undisputed that the identities of AmeriGas customers are often readily ascertainable and can typically be obtained by a cursory, roadside examination of the vendor logo on a homeowner's outdoor propane tank. The same is true concerning the identities of the customers of any competing vendor of propane gas in the area. In these circumstances, the Court concludes that AmeriGas's customer identities are not confidential in any meaningful sense. In addition, the purported evidence of Coffey's alleged breach is the same for both the non-disclosure and non-solicitation provisions, i.e., Coffey's solicitation of

---

[5] In *McElmurry v. Alex Fergusson, Inc.*, No. 1:04CV389, 2006 U.S. Dist. LEXIS 10760, at *39–47 (M.D.N.C. Mar. 8, 2006) (unpublished) (applying North Carolina law), a North Carolina federal district court considered a defendant's argument that the confidentiality agreement at issue was, in substance, a non-compete agreement. The court concluded, however that the confidentiality agreement did not function as a covenant not to compete in the circumstances presented there.

AmeriGas customers. Moreover, the alleged damages for Coffey's alleged breach of both provisions also appears to be the same, i.e., lost profits based on the customers converted by Coffey to Marsh from AmeriGas.

{41}    In sum, the Court concludes that the anticipated and intended effect of the prohibition on Coffey's disclosure and use of AmeriGas's customer identities here is not to protect AmeriGas's confidential business information – as noted, the Court concludes that AmeriGas's customer identities are not confidential in these circumstances – but rather to preclude Coffey from soliciting AmeriGas's customers.

{42}    As a result, the Court concludes that the non-disclosure provision – to the extent it prevents Coffey's disclosure and use of the identities of AmeriGas's past, present and prospective customers – essentially functions as a restrictive covenant in restraint of trade and should therefore be analyzed as such. *See id.* at 196–97, 476 S.E.2d at 376–77. The Court's conclusion is consistent with the treatment of similar provisions by courts in other states. *See, e.g., McGough v. Nalco Co.*, 496 F. Supp. 2d 729, 756 (N.D.W. Va. 2007) (finding that the non-disclosure agreement at issue functioned as a covenant not to compete and thus was subject to the same analysis); *Carolina Chem. Equip. Co. v. Muckenfuss*, 471 S.E.2d 721, 723 (S.C. Ct. App. 1996) ("Despite its designation as a 'Covenant Not to Divulge Trade Secrets,' this section would substantially restrict [defendant's] competitive employment activities. Because it basically has the effect of a covenant not to compete, we must subject it to the same scrutiny as a covenant not to compete."); *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 730 (D.S.C. 2007) ("Because they function as non-compete covenants, the promise of continued employment is not adequate consideration for the non-disclosure and employee non-solicitation covenants . . . ."); *Service Ctrs. of Chicago, Inc. v. Minogue*, 535 N.E.2d 1132, 1137 (Ill. App. Ct. 1989) ("[T]he confidentiality agreement amounts in effect to a post-employment covenant not to compete which is completely unrestricted in duration or geographical scope.").

{43}    Accordingly, because the portion of the non-disclosure provision prohibiting Coffey's use or disclosure of the identities of AmeriGas's "past, present, and prospective customers," like the non-competition and non-solicitation provisions, is

unsupported by consideration, the Court concludes it is an unenforceable restrictive covenant to this extent. *See supra* ¶¶ 24–32.

{44} In addition to prohibiting Coffey from using or disclosing customer identities, however, the non-disclosure provision also seeks to prohibit the use or disclosure of customer credit information, gas usage patterns, and pricing and marketing information relating to AmeriGas customers. The Court concludes that the purpose and function of the non-disclosure provision to this extent is not to prevent Coffey from soliciting AmeriGas customers, but rather to prevent the use or disclosure of valuable, confidential information of AmeriGas concerning its customers. *See, e.g.*, *McElmurry*, 2006 U.S. Dist. LEXIS 10760, at *42 (analyzing a confidentiality agreement that prohibited using or disclosing business information such as formulas, product lines, or processes as a non-restrictive covenant rather than as a restrictive covenant). Accordingly, the Court finds that the non-disclosure provision, to the extent that it seeks to prevent the use or disclosure of customer credit information, gas usage patterns, and pricing and marketing information, is not in restraint of trade, and thus that Coffey's employment by AmeriGas is sufficient consideration to support the provision to this extent.[6] *See Sirona Dental*, 2015 U.S. Dist. LEXIS 6080, at *6 (holding continued employment sufficient consideration for employment agreement not in restraint of trade under North Carolina law).

{45} Coffey next argues that the non-disclosure provision does not protect a legitimate business interest of AmeriGas as applied here. The Court concludes that this argument must also fail. Our courts have recognized that "a covenant is reasonably necessary for the protection of a legitimate business interest 'if the nature

---

[6] Under North Carolina's "strict blue pencil doctrine", the Court "may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable." *Hartman*, 117 N.C. App. at 317, 450 S.E.2d at 920. Further, the Court "may use its inherent power to enforce the reasonable, divisible provisions of the [covenant]." *Bev. Sys. of the Carolinas, LLC v. Assoc. Bev. Repair, LLC*, __ N.C. App. __, __, 762 S.E.2d 316, 321 (2014). Because the Court concludes that the provisions of the non-disclosure provision here are "distinctly separable," the Court elects to exercise its authority to enforce the "reasonable, divisible provisions of the covenant." Accordingly, the Court will not enforce the term past, present and prospective customer "identities" in the definition of Confidential Information as it is used in the non-disclosure provision but will enforce the remainder of the definition. (Post-Employment Agr. ¶ 2a.)

of the employment is such as will . . . enable [the employee] to acquire valuable information as to the nature and character of the business and the . . . requirements of the patrons or customers[.]'" *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 656, 670 S.E.2d 321, 327 (2009) (quoting *A.E.P. Indus. v. McClure*, 308 N.C. 393, 408, 302 S.E.2d 754, 763 (1983); *see also Johnson Controls, Inc. v. A.P.T. Critical Sys.*, 323 F. Supp. 2d 525, 534 (S.D.N.Y. 2004) (recognizing that an employer has a legitimate interest in preventing an employee's release of confidential customer information). The Court therefore concludes that the non-disclosure provision protects a legitimate business interest of AmeriGas to the extent that it seeks to prevent the use or disclosure of credit information, gas usage patterns, and pricing and marketing information relating to AmeriGas customers, and thus is enforceable to this extent.[7]

{46} Having determined that the non-disclosure provision is enforceable to the extent described above, the Court must therefore determine whether AmeriGas has brought forward sufficient evidence of Coffey's alleged breach of that provision to avoid dismissal under Rule 56.

{47} Although generally contending that Coffey used or disclosed confidential customer information he memorized while employed at AmeriGas, AmeriGas does not offer any evidence that Coffey actually used or disclosed credit information, gas usage patterns, and pricing and marketing information relating to AmeriGas customers. Indeed, AmeriGas has not offered any evidence from Coffey, Marsh, any of the former AmeriGas customers who are now purchasing propane from Marsh, or any other person to support its contention that Coffey used or disclosed this customer information at any time after he was terminated by AmeriGas. The most AmeriGas offers is the company's contention that Coffey stole a customer list containing this

---

[7] Coffey also argues that the non-disclosure provision may not be enforced because Coffey was terminated involuntarily. To date, however, the North Carolina courts have not explicitly considered the voluntary or involuntary nature of an employment termination in determining the enforceability of a restrictive covenant. *See supra* ¶ 22. Accordingly, the Court declines to extend North Carolina law in the fashion Coffey suggests.

information from the Marshall office upon the termination of his employment.[8] Coffey, however, denies taking the customer list, and AmeriGas's only evidence of his alleged theft is its allegation that the list went missing after Coffey was fired. (Second Coffey Aff. ¶ 9, Nov. 19, 2013.) Based on this fact, and the evidence of Defendants' rapid conversion of AmeriGas customers after hiring Coffey, AmeriGas asks the Court to infer that Coffey took and used or disclosed the list.

{48} The Court is not prepared to make this leap. Indeed, it is undisputed that it was weeks after Coffey was terminated before anyone at AmeriGas noticed that the customer list was missing. (Shockley Dep. 39:4–8.) It is also undisputed that Coffey has a remarkable memory and knew all of the customers on his route, raising considerable doubt concerning whether Coffey had a need for the list and thus a motive to acquire it. (Coffey Dep. 64:16–19, 72:14–73:19, 116:16–21.) In short, the undisputed facts suggest that the list could have gone missing for any number of reasons other than Coffey's alleged theft. The law is clear, however, that "[t]he plaintiff must offer evidence, beyond mere speculation or conjecture, sufficient for a jury to find every essential element of [its] claim." *Henson v. Green Tree Servicing LLC*, 197 N.C. App. 185, 189, 676 S.E.2d 615, 618 (2009) (citation and internal quotation marks omitted); *see also Prometheus Grp. Enters., LLC v. Viziya Corp.*, No. 5:14-CV-32-BO, 2014 U.S. Dist. LEXIS 107231, at *18 (E.D.N.C. Aug. 5, 2014) (under North Carolina law, "[a]lleging that an employee had access to confidential information is insufficient to support a claim for breach of a non-disclosure agreement absent evidence or allegations of actual breach.") (citing *VisonAIR, Inc. v. James*, 167 N.C. App. 504, 510, 606 S.E.2d 359, 363 (2004)).

{49} Accordingly, although the Court has found that the non-disclosure provision is enforceable to the extent it prevents Coffey's use or disclosure of credit information, gas usage patterns, and pricing and marketing information relating to AmeriGas customers, the Court concludes that AmeriGas's claim for breach of that

---

[8] AmeriGas offers evidence that the customer list included customer names and addresses, as well as a summary of billing, delivery schedules, historical usage information, and pricing information, concerning all of the customers in AmeriGas's Marshall office. (Shockley Aff. ¶ 10.)

provision should be dismissed because AmeriGas has failed to bring forward sufficient evidence of Coffey's breach to sustain its claim under Rule 56.[9]

B.    Misappropriation of Trade Secrets (Coffey and Marsh)

{50}    In order to survive summary judgment on a claim for misappropriation of trade secrets under the North Carolina Trade Secrets Protection Act ("TSPA"), a plaintiff must allege facts sufficient to allow a reasonable finder of fact to conclude (i) that the plaintiff possesses trade secrets, *see Bank Travel Bank v. McCoy*, 802 F. Supp. 1358, 1360 (E.D.N.C. 1992) (applying North Carolina law), and (ii) that "misappropriation was accomplished," *Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv.*, 2015 NCBC LEXIS 13, at *15 (N.C. Super. Ct. Feb. 4, 2015). Defendants contend that AmeriGas cannot establish the existence of a trade secret and, even if it could, AmeriGas cannot show misappropriation.

{51}    AmeriGas argues that its "customer information, including identities, addresses, historical usage, credit information and pricing information" constitute its protectable trade secrets. (AmeriGas Br. Opp. Mot. Summ. J. 30.) AmeriGas further contends that "much of AmeriGas's trade secret information is in [Coffey's] memory," (AmeriGas Br. Opp. Mot. Summ. J. 33), and is also kept in its password-protected database at the Marshall office, which was kept in hard-copy form on top of a file cabinet in the Marshall office but which disappeared at some point after Coffey was terminated.

{52}    The parties do not dispute that Coffey retained the names and addresses of AmeriGas's customers in his memory after his termination. The North Carolina courts, however, have long held that "the knowledge of a deliveryman, or other personal solicitor, of the names and addresses of his employer's customers, gained during the performance of his duties, is not a trade secret . . . ." *Kadis v. Britt*, 224 N.C. 154, 162, 29 S.E.2d 543, 548 (1944); *see also Asheboro Paper & Packaging, Inc.*

---

[9]  The facts offered to support AmeriGas's claim for misappropriation of trade secrets under N.C. Gen. Stat. § 66-152, *et seq.*, appear to the Court to constitute substantially the same facts supporting AmeriGas's claim for alleged breach. As explained more fully *infra*, both claims depend upon purported evidence showing that Coffey used or disclosed AmeriGas customer information, including credit information, gas usage patterns, and pricing information.

*v. Dickinson*, 599 F. Supp. 2d. 664, 677 (M.D.N.C. 2009) ("Under North Carolina law, customer information maintained in the memory of a departing employee is not a trade secret."). Accordingly, the Court concludes that the names and addresses of AmeriGas's customers do not constitute AmeriGas's protectable trade secrets under the TSPA in the circumstances presented here.

{53} Turning next to the "historical usage, credit information and pricing information" that comprise the remainder of AmeriGas's alleged trade secrets, the Court concludes that, even assuming without deciding that such information constitutes AmeriGas's protectable trade secrets,[10] AmeriGas has failed to bring forward "substantial evidence" of misappropriation by Coffey or Marsh, requiring dismissal of its claim. *See Safety Test & Equip. Co. v. Am. Safety Util. Corp.*, 2015 NCBC LEXIS 40, at \*28 (N.C. Super. Ct. Apr. 23, 2015) ("[O]nce a plaintiff has demonstrated that it has a trade secret, it must also present 'substantial evidence' of misappropriation . . . .").

{54} "To constitute misappropriation of a trade secret, defendant must have 'had a specific opportunity to acquire it for disclosure or use,' or 'has acquired, disclosed, or used it without the express or implied consent or authority of the owner.'" *RLM Communs., Inc. v. Tuschen*, 66 F. Supp. 3d 681, 696 (E.D.N.C. 2014) (quoting N.C. Gen. Stat. § 66-155(2)). Circumstantial evidence may support a finding that a defendant misappropriated trade secrets. *See, e.g., Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 377, 542 S.E.2d 689, 693 (2001). However, "[a] party cannot withstand summary judgment if it offers only mere speculation of misappropriation instead of evidence supported by the facts." *Static Control Components, Inc. v. Darkprint Imaging, Inc.*, 200 F. Supp. 2d 541, 545 (M.D.N.C. 2002) (applying North Carolina law).

---

[10] The Court observes that "our courts have found the following to constitute a trade secret: cost history information; price lists; and confidential customer lists, pricing formulas and bidding formulas." *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 53, 620 S.E.2d 222, 226 (2005); *see also Koch Measurement Devices, Inc. v. Armke*, 2013 NCBC LEXIS 45, at \*8 (N.C. Super. Ct. Oct. 14, 2013) (noting that customer lists including names, contact persons, addresses, phone numbers, customer ordering habits and history, and company pricing and inventory management strategies may constitute trade secrets).

{55}    As discussed above in connection with alleged breach of the non-disclosure provision, AmeriGas has not offered evidence permitting a reasonable factfinder to conclude that Coffey used or disclosed credit information, gas usage patterns, and pricing information of AmeriGas customers.  Indeed, while Coffey acknowledged using customer names and addresses that he retained in his memory, he specifically denied recalling, or ever using or disclosing, any credit, usage, or pricing information in his efforts for Marsh, (Coffey Dep. 158:6–158:22), and AmeriGas has not brought forward any evidence from any source – whether from Coffey, Marsh, a former AmeriGas customer, or another third party – that provides any support for AmeriGas's contention that Coffey used or disclosed its protectable trade secrets.  AmeriGas has not offered evidence that Coffey accessed or downloaded customer information from AmeriGas's computer database in connection with his departure from the company, and, as discussed above, AmeriGas's evidence that Coffey stole the customer list from the top of the file cabinet in the AmeriGas Marshall office is speculative at best.  *See, e.g., Henson*, 197 N.C. App. at 189, 676 S.E.2d at 618 ("[t]he plaintiff must offer evidence, beyond mere speculation or conjecture, sufficient for a jury to find every essential element of [its] claim.").

{56}    In sum, AmeriGas's evidence of misappropriation is simply that Coffey retained customer names and addresses in his memory from his years of employment and successfully called on some of those customers after he was hired by Marsh following his termination by AmeriGas.  The Court concludes that such does not constitute "substantial evidence" of misappropriation under N.C. Gen. Stat. § 66-152(1)) in the circumstances presented here.[11]  *Safety Test*, 2015 NCBC LEXIS 40, at *28; *see, e.g., Tuschen*, 66 F. Supp. 3d at 696 (concluding that where "assertions . . . suggest at most that [employee] gained knowledge and experience from working with [former employer] that [he] then brought with [him] to [new employer] . . . [a]quiring

---

[11] Although not specifically pleaded or argued, Plaintiffs' allegations and purported proof suggest at least some reliance upon the doctrine of "inevitable disclosure."  The Court notes that the North Carolina courts have not yet firmly adopted this doctrine, *see generally DSM Dyneema, LLC v. Thagard*, 2015 NCBC LEXIS 50,  at *15–18  (N.C. Super. Ct. May 12, 2015) (discussing doctrine), and the Court declines to apply the doctrine to these facts.

and using such knowledge and experience . . . does not constitute misappropriation of trade secrets under North Carolina law"); *Travenol Labs., Inc. v. Turner*, 30 N.C. App. 686, 696, 228 S.E.2d 478, 486 (1976) (denying motion for preliminary injunction where plaintiff failed to show actual use or disclosure of trade secrets).[12] The Court therefore concludes that Plaintiffs' misappropriation claim under the TSPA should be dismissed.[13]

C.    Tortious Interference With Contract (Marsh)

{57}    To state a claim for tortious interference with contract, Plaintiffs must show: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Labs*, 322 N.C. at 661, 370 S.E.2d at 387.

{58}    To prevail on summary judgment, Marsh must show by undisputed evidence that AmeriGas cannot satisfy at least one of the required elements of its tortious interference claim. *See Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 21, 423 S.E.2d 444 (1992). The Court concludes that Marsh has met its burden here because the dismissal of Plaintiffs' claim for breach of contract against Coffey necessitates the dismissal of Plaintiffs' claim against Marsh for tortious interference with that same contract. *See, e.g.*, *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, __ N.C. App. __, __, 740 S.E.2d 923, 928 (2013) (upholding dismissal of tortious interference with contract claim because non-compete agreement found unenforceable); *Giuliani v. Duke Univ.*, No. 1:08CV502, 2009 U.S. Dist. LEXIS 44412, at *13 (M.D.N.C. May 19, 2009)

---

[12] Although there is evidence that the information Coffey retains in his memory extends to pricing and usage, which potentially could constitute trade secrets, *see Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1459 (M.D.N.C. 1996) (applying North Carolina law) ("Although plaintiffs here . . . did not show [defendant] took particular documents with him, his memory is sufficient."), AmeriGas's failure to show substantial evidence of misappropriation is fatal to its claim.

[13]    In light of the Court's resolution of Plaintiffs' trade secret misappropriation claim, the Court foregoes application of the familiar test used to determine the existence of a protectable trade secret set forth in *Wilmington Star News v. New Hanover Regional Medical Center*, 125 N.C. App. 174, 180–81, 480 S.E.2d 53, 56, *appeal dismissed*, 346 N.C. 557, 488 S.E.2d 826 (1997).

(dismissing tortious interference claim under North Carolina law where plaintiff failed to show valid contract).[14]

   D.   Unfair and Deceptive Trade Practices (Coffey and Marsh)

{59}   A plaintiff may prevail on a UDTP claim by demonstrating: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 374, 555 S.E.2d 634, 642 (2001); *see also* N.C. Gen. Stat. § 75-1.1 (2014). "'A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,' and a 'practice is deceptive if it has the capacity or tendency to deceive.'" *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 91, 747 S.E.2d 220, 228 (2013) (citations omitted). Whether an act or practice is unfair or deceptive is a question of law for the Court. *Songwooyarn Trading Co. v. Sox Eleven, Inc.*, 213 N.C. App. 49, 56, 714 S.E.2d 162, 167 (2011).

{60}   AmeriGas claims that Defendants have violated N.C. Gen. Stat. § 75-1.1 because, first, trade secret misappropriation is a per se violation of the statute, and second, tortious interference with a restrictive covenant is sufficient, without more, to establish liability. Accordingly, the Court concludes that the dismissal of Defendants' trade secret and tortious interference claims extinguishes AmeriGas's UDTP claim on these grounds.

---

[14] The Court further concludes that even if Coffey is deemed to have breached the Post-Employment Agreement, Plaintiffs' tortious interference with contract claim against Marsh still must fail. AmeriGas argues that it is reasonable to infer that Marsh's payment of a tank set bonus and a twenty-five percent hourly wage increase intentionally induced Coffey to breach his contractual commitments to AmeriGas. The Court is not persuaded, however, that the mere existence of these payments in these circumstances, without more, supports such an inference. To the contrary, there is undisputed evidence that these payments were made not to induce Coffey to breach his contract, but rather as part of Marsh's general compensation program. First, it is undisputed that the tank set bonus program was available to all employees and was in place well before Marsh hired Coffey. (Raby Dep. 87:13–88:11.) Next, it is also undisputed that Coffey qualified for the raise before Marsh was made aware of the Post-Employment Agreement on July 5, 2013 (Raby Dep. 87:13–88:11.) Thus, the Court concludes that AmeriGas has failed to bring forward evidence sufficient to establish the intentional inducement element of its tortious interference claim, and, for this additional reason, the claim should be dismissed as a matter of law.

{61}     AmeriGas also argues that Defendants' misuse of AmeriGas's confidential information violates the UDTP statute.  This argument, however, is simply a reformulation of AmeriGas's other claims, all of which have been dismissed.  In particular, the Court has previously concluded in dismissing the breach of contract and misappropriation claims that AmeriGas has not brought forward sufficient evidence that Coffey breached the non-disclosure provision of the Post-Employment Agreement or misappropriated AmeriGas's alleged trade secrets to sustain these claims.  For these same reasons, the Court concludes that Plaintiffs' UDTP claim should likewise be dismissed.

V.

CONCLUSION

{62}     Based on the foregoing, the Court hereby **GRANTS** Marsh's Motion for Summary Judgment and **GRANTS** Coffey's Motion for Summary Judgment.

{63}     Plaintiffs' Amended Complaint and all claims contained therein are hereby **DISMISSED** with prejudice.

{64}     **SO ORDERED**, this the 15th day of October 2015.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases